IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
CHRISTOPHER LEAK,                    )
                                     )
              Plaintiff,             )
                                     )
       v.                            )      1:13CV837
                                     )
HOUSING AUTHORITY OF                 )
WINSTON-SALEM, et al.,               )
                                     )
              Defendants.            )
```

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the Court on Plaintiff's Application for Leave to Proceed <u>In</u> <u>Forma</u> <u>Pauperis</u> (Docket Entry 1), filed in conjunction with Plaintiff's pro se Complaint (Docket Entry 2). The Court will grant Plaintiff's request to proceed as a pauper for the limited purpose of recommending dismissal of his federal claims under 28 U.S.C. § 1915(e)(2)(B)(ii) and dismissal without prejudice of his state-law claims pursuant to 28 U.S.C. § 1367(c)(3).[1]

LEGAL BACKGROUND

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely

---

[1] Plaintiff's Application does not fully address several questions, most notably by referencing bankruptcy proceedings in questions 5 and 8 without indicating the amounts owed by or to Plaintiff. (<u>See</u> Docket Entry 1 at 2.) However, in light of the recommendation of dismissal, no need exists to address this matter further.

because his poverty makes it impossible for him to pay or secure the costs.'" Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 342 (1948)). "Dispensing with filing fees, however, [is] not without its problems. Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants. In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 255 (4th Cir. 2004).

To address this concern, the in forma pauperis statute provides, in relevant part, that "the court shall dismiss the case at any time if the court determines that – . . . (B) the action or appeal – . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2). A complaint falls short when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

2

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[2] The Court may also anticipate affirmative defenses that clearly appear on the face of the complaint. Nasim, 64 F.3d at 955.

## DISCUSSION

Plaintiff's Complaint names the Housing Authority of Winston-Salem and fourteen of its employees as Defendants. (Docket Entry 2 at 1, 3.) It asserts claims for race-based employment discrimination and retaliation under Title VII and 42 U.S.C. § 1981. (Id. at 4, 15.) The Complaint further alleges state-law claims for wrongful discharge in violation of public policy and intentional infliction of emotional distress. (Id. at 13-16.) As factual matter supporting these allegations, the Complaint offers

---

[2] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly in dismissing pro se complaint); accord Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)).

3

a rambling narrative of Plaintiff's difficulties with his coworkers and supervisors, ultimately resulting in his termination. (Id. at 6-13.)

According to the Complaint, Plaintiff's difficulties in his job as a maintenance technician began when he disagreed with his coworkers as to the correct method to repair an air conditioner during his fourth day on the job and he then reported said coworkers to a supervisor. (Id. at 6.) As a result, "from that day forward [Plaintiff's] co[]workers alienated him. Also he was not included in regular repairs and shared maintenance duties while the same unqualified coworkers continue[d] to service Central Air units at the Complex." (Id. at 7.) The Complaint alleges that a supervisor subsequently transferred Plaintiff to work in a different apartment complex "in an attempt to cover up retaliatory acts, [d]iscrimination, and the Clean Air Act Title VI infractions . . . ." (Id.)

At the second complex, Plaintiff allegedly requested that his supervisor "provide to him commercial grade latex gloves and not the one size fit all gloves from the local Home Depot that would not properly fit [] Plaintiff[']s hands and would on occasion rupture" and later "complained to the Property Manager Karen McCain on several occasion[s] concerning [that supervisor's] lack of support, misconduct[,] and . . . aggressive behavior toward [] Plaintiff." (Id. at 9.)

4

According to the Complaint, Plaintiff later apparently irritated two residents of the complex while servicing their air conditioner.  (See id. at 10-11.)  Subsequently, Plaintiff allegedly "request[ed] [his supervisor] Mrs. McCain to have Matthew the Air Conditioner Manager perform service or give his opinion to what his findings were because the two [residents] did not heed his professional advice."  (Id. at 11.)

On that same day, "Plaintiff also asserts that Mrs. McCain was the only person who was unprofessional dealing with [] [P]laintiff, yelled, pointed her finger in [his] face to provoke work place discord and violence."  (Id. at 12.)  Plaintiff allegedly "walked off to avoid making the situation worst [sic]," but Mrs. McCain followed him and "continued yelling and pointing her finger in [] Plaintiff[']s face stating she was the boss and that she could say and do as she will until [] Plaintiff assert[ed] [him]self and asked Mrs. McCain [to] stop putting her finger in his face and stated she does not have the authority to do anything she wants to say and do with him."  (Id.)  The Complaint alleges that, following this incident, Mrs. McCain suspended Plaintiff until further notice.  (Id. at 13.)  Plaintiff allegedly received an official termination letter several days later.  (Id.)

Both Title VII and § 1981 provide a cause of action for race-based employment discrimination.  However, "Title VII [and by logical extension, § 1981] . . . does not set forth a 'general

5

civility code for the American workplace.'"  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)).  To the contrary, Title VII and § 1981 require an employee claiming race discrimination to show that an adverse employment action occurred "because of" race.  42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 1981; see also Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 544-45 & n.3 (4th Cir. 2003) (discussing fact that, under Title VII and § 1981, "the ultimate question [is] whether [the] plaintiff has proved that the defendant intentionally discriminated against her because of her race" (internal brackets and quotation marks omitted)).

In this case, however, the Complaint offers no facts showing that Defendants mistreated or terminated Plaintiff because of his race.  It indicates that "Plaintiff was the only African American Maintenance Technician on the Piedmont [P]ark maintenance work force" (Docket Entry 2 at 6), but it does not give the race of any of Plaintiff's supervisors (see id. at 6-13).  Moreover, none of the interactions between Plaintiff and his coworkers and supervisors have any identifiable racial component. (See id.)  Nor would the mere allegation that a supervisor of one race treated an employee of a different race rudely present a plausible claim of discrimination. See, e.g., Hawkins v. Pepsico, Inc., 203 F.3d 274, 282 (4th Cir. 2000) (declaring that the "[l]aw does not blindly

6

ascribe to race all personal conflicts between individuals of different races").

Moreover, the face of Plaintiff's Complaint clearly identifies a "legitimate, nondiscriminatory reason" for his negative interactions in the workplace culminating in his discharge. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973) (explaining that, under Title VII, employer may rebut employee's prima facie case of discrimination by giving legitimate reason for adverse employment action); see also Patterson v. McLean Credit Union, 491 U.S. 164, 186-87 (1989) (adopting same standard for § 1981). Specifically, the Complaint indicates that Plaintiff angered his coworkers by asserting they were not performing their job responsibilities properly and "from that day forward [Plaintiff's] co[]workers alienated him." (Docket Entry 2 at 6-7.) The Complaint also details that Plaintiff engaged in behavior that (rightly or wrongly) angered his supervisors and residents of the complex. (See id. at 8-12.) Thus, although Plaintiff's Complaint details several incidents that ultimately led to his discharge, none of them involved discrimination based on race.

Similarly, retaliation claims under Title VII and § 1981 require an employee to show that an adverse employment action occurred because the employee engaged in a protected activity under the same statutes. Bryant, 333 F.3d at 543-44. Plaintiff's Complaint alleges "retaliation for[] his r[a]ising safety concerns,

7

as well as his reporting safety complaints to the Defendants['] agents." (Docket Entry 2 at 14.)  It details several instances of "retaliation" in response to his complaints that his coworkers and supervisors did not perform their jobs correctly, failed to follow various safety and environmental regulations, or neglected to provide him with the proper equipment.  (See id. at 7, 8-9, 11.) However, reporting a safety or environmental violation does not constitute a protected activity under Title VII or § 1981 and thus cannot alone form the basis for a retaliation claim under these statutes.  See, e.g., Rodriguez v. Beechmont Bus Serv., Inc., 173 F. Supp. 2d 139, 150 (S.D.N.Y. 2001) (dismissing Title VII claim based on retaliation in response to cooperation with OSHA investigation because "unsafe working conditions are not made unlawful under Title VII").

In sum, simply invoking the terms "discrimination" or "retaliation" does not suffice to state a claim.  See, e.g., Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  The Complaint thus fails to state a plausible claim for race discrimination or retaliation under Title VII or § 1981.

Plaintiff's only remaining claims arise under state law. "[I]n any civil action of which the district courts have original jurisdiction, the district courts have supplemental jurisdiction

8

over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right . . . . [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). In light of the recommended dismissal of the federal claims at the pleading stage and the absence of grounds for the exercise of diversity jurisdiction,[3] the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims and, instead, should dismiss those claims without prejudice.[4]

---

[3] The Complaint identifies Plaintiff as a resident of Forsyth County, North Carolina, and Defendant as both incorporated in North Carolina and having its principal place of business in Winston-Salem, North Carolina. (Docket Entry 2 at 5.) Such circumstances cannot satisfy the diversity jurisdiction statute. See 28 U.S.C. § 1332(a).

[4] To the extent statute of limitations concerns may apply to Plaintiff's refiling of the remaining claims in state court, 28 U.S.C. § 1367(d) provides: "The period of limitations for any claim asserted under subsection (a), and for any other claim in the same

9

Case 1:13-cv-00837-TDS-LPA   Document 4   Filed 10/02/13   Page 9 of 10

CONCLUSION

Plaintiff's Complaint fails to state a claim for any federal cause of action.

**IT IS THEREFORE ORDERED** that Plaintiff's Application for Leave to Proceed In Forma Pauperis and Affidavit/Declaration in Support (Docket Entry 1) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that the Complaint's federal claims be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and its state-law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 2, 2013

---

action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

10